[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-14943

_____

D.C. Docket Nos. 1:15-cv-22174-JLK,
6:16-bk-07183-RAC

RENATO FONSECA,
SERGIO CARVALHO,
RONALD MARC GROSS,

Plaintiffs - Appellants,

versus

ALLTOUR AMERICA TRANSPORTATION, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 28, 2018)

Before JILL PRYOR, BRANCH and BOGGS,[*] Circuit Judges.

_____

[*] Honorable Danny J. Boggs, United States Circuit Judge for the Sixth Circuit, sitting by designation.

PER CURIAM:

Renato Fonseca, Sergio Carvalho, and Ronald Gross (the "drivers") filed this action on behalf of themselves and others similarly situated, alleging that their former employer AllTour America Transportation, Inc. ("AllTour"), failed to pay overtime as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1). AllTour filed a motion for summary judgment, arguing that the drivers were exempt from the FLSA's overtime requirement. The district court agreed and granted AllTour's summary judgment motion. We affirm.

## I.    FACTUAL BACKGROUND

AllTour operates shuttle services for foreign tourists visiting Florida. AllTour's customers are all international tourists, with approximately 90% coming from Brazil. The tourists generally purchase transportation from AllTour through travel agents as part of prepaid travel packages.

Fonseca, Carvalho, and Gross were AllTour shuttle drivers. While working for AllTour, they were responsible for picking tourists up from the Miami airport and taking them to their hotels and then picking them up from their hotels to take them back to the airport. While the tourists stayed in Florida, the drivers also would transport them between their hotels and other places in Miami and drive them on city tours of Miami. The drivers sometimes would drive the tourists

2

beyond the Miami area to Fort Pierce, Florida, where they would meet another driver who would take the tourists the rest of the way to theme parks in Orlando.

For their services, AllTour paid each driver a weekly salary of between $500 and $600.  A driver's salary did not change based on the number of hours he actually worked, and a driver received no overtime pay if he worked over 40 hours in a week.  But if a driver worked all seven days in a week, he was paid an extra $85 to $100.  The drivers received an additional $30 for each trip to Fort Pierce.

Fonseca and Carvalho sued AllTour in state court, alleging that AllTour violated the FLSA by failing to compensate them and other similarly situated drivers with overtime pay.  After AllTour removed the action to federal court, Gross joined the suit as a plaintiff.  AllTour moved for summary judgment, arguing that the drivers were exempt from the FLSA's overtime pay requirement.  The district court agreed and granted summary judgment to AllTour. The drivers appealed.

## II.    STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*, applying the same legal standards as the district court.  *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006).  Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a). The court must draw all reasonable inferences in favor of the non-moving party. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1326 (11th Cir. 1998).

## III.   DISCUSSION

This appeal requires us to consider the interaction of two statutes: the FLSA and the Motor Carrier Act of 1935. The FLSA requires employers to compensate covered employees at an overtime rate if they work more than 40 hours in a week. 29 U.S.C. § 207(a)(1). Congress enacted the FLSA "with the goal of protecting all covered workers from substandard wages and oppressive working hours." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012) (alteration adopted) (internal quotation marks omitted). But the FLSA's overtime compensation requirement "does not apply with respect to all employees." *Id.* As relevant here, under the "motor carrier exemption," workers are exempt from the FLSA's overtime requirement if the United States Secretary of Transportation is authorized to set their maximum hours. *See* 29 U.S.C. § 213(b)(1). We construe FLSA exemptions, including the motor carrier exemption, narrowly against employers. *Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1226 (11th Cir. 2009).

In the Motor Carrier Act, Congress authorized the Secretary of Transportation to set maximum hours of service for certain employees of a "motor

4

carrier." *See* 49 U.S.C. § 31502(b). The Secretary's authority to set maximum hours extends to all "transportation . . . described in section[] 13501 . . . of this title." *Id.* § 31502(a)(1). Section 13501, in turn, covers transportation between places in different states, between places in the same state if the transport passes through another state, and between the United States and a foreign country to the extent that the transportation occurs in the United States. *Id.* § 13501(1).

From these statutory provisions, we have distilled two requirements for the Secretary to have jurisdiction to set an employee's maximum hours, considering both the nature of the employer's business generally and the nature of the work involved in the employee's job. First, the "employer's business must be subject to the Secretary of Transportation's jurisdiction under the [Motor Carrier Act]." *Walters*, 575 F.3d at 1227. Second, "the employee's business-related activities must directly affect the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." *Id.* (alteration adopted) (internal quotation marks omitted). We have recognized that even purely intrastate transportation can constitute part of interstate or foreign commerce if "it is part of a continuous stream of interstate [or foreign] travel," meaning there is "a practical continuity of movement between the intrastate segment and the overall interstate [or foreign] flow." *See id.* at 1229 (internal quotation marks omitted).

5

Here, the drivers concede that the first requirement is satisfied because AllTour is a motor carrier subject to the Secretary of Transportation's jurisdiction. The drivers assert that the second prong is not satisfied because the "vast majority" of the work that they performed for AllTour involved the transportation of passengers in intrastate commerce, rather than interstate or foreign commerce. Appellants' Br. at 20. The drivers concede that they engaged in interstate commerce activities when they picked up tourists, who had just arrived in Florida, at the airport and drove them to their hotels. But they assert that these trips were insufficient to give the Secretary of Transportation authority to set their maximum hours of service because the activities involving interstate commerce constituted only a *de minimis* portion of their jobs.

We assume for purposes of this appeal that the drivers are correct that if interstate or foreign commerce activities constituted only a *de minimis* portion of their jobs, the Secretary of Transportation would lack the authority to set their maximum hours and the FLSA's motor carrier exemption would not apply. Even assuming this, however, the drivers engaged in interstate or foreign commerce activities on more than a *de minimis* basis. We reach this conclusion after considering the Supreme Court's decision in *Morris v. McComb*, 332 U.S. 422 (1947), and guidance from the United States Department of Transportation.

6

In *Morris*, the Supreme Court considered whether drivers who worked for a trucking company fell within the motor carrier exemption. *Id.* at 423, 426. Although the drivers would occasionally transport freight in interstate commerce, only 3.65% of their trips directly involved interstate commerce, and this business made up only about 4% of the trucking company's revenue. *Id.* at 427, 433. Despite the company's limited activities involving interstate commerce, the Court held that the Interstate Commerce Commission (the "Commission"), the predecessor to the Department of Transportation, had the power to establish maximum hours for all the drivers and that none were entitled to overtime under the FLSA. *Id.* at 437-38. The Court reached this conclusion because the employer assigned the interstate commerce trips to the truck drivers "generally throughout the year," "in the normal operation of the business," and drivers "shared indiscriminately" in the trips. *Id.* at 433. Of the employer's 43 truck drivers, 41 drivers had made at least one trip with interstate freight. *Id.* Additionally, on average each driver had made over 16 such trips. *Id.* And the two drivers who had not made any interstate trips had been employed for only about six months. *Id.* Because the drivers were prepared at any time to engage in interstate commerce, the Court concluded that the Commission had the authority to set their maximum hours of service under the Motor Carrier Act, even for periods when they engaged only in intrastate commerce. *See id.* at 434.

Consistent with *Morris*, the Department of Transportation has explained that the Secretary has authority to set maximum hours for a driver whose regular duties include driving in interstate commerce. DOT Notice, 46 Fed. Reg. 37,902-02, 37,903 (July 23, 1981) ("[A] driver will remain under the [Secretary's] jurisdiction . . . for as long as the driver is in a position to be called upon to drive in interstate commerce as part of the driver's regular duties."). And a driver is subject to the Secretary's jurisdiction even if he "has not personally driven in interstate commerce if, because of company policy and activity, the driver could reasonably be expected to do interstate driving." *Id.* The Department has recognized a *de minimis* exception, however, explaining that the Secretary lacks jurisdiction to set maximum hours for a driver when over a lengthy period of time he made only a few interstate trips. *See id.*; *see also* 29 C.F.R. § 782.2(b)(3). This court previously has suggested that the *de minimis* exception applies only when a driver's interstate business "constitutes less than one percent of the overall trips." *Walters*, 575 F.3d at 1228.

Turning to the facts of this case, we acknowledge that the drivers spent a significant amount of time each day driving passengers from their hotels to locations within Florida. But *Morris* and the guidance from the Department of Transportation tell us that the Secretary has authority to set a driver's maximum hours if the driver can reasonably be expected to engage in some driving that

qualified as interstate or foreign commerce.  *See Morris*, 332 U.S. at 433-34; 46 Fed. Reg. at 37,903.  We accept that there may be a *de minimis* exception to this general rule.  But the evidence here, viewed in the light most favorable to the drivers, shows that they engaged in transportation involving interstate or foreign commerce on more than a *de minimis* basis.  On most days the drivers picked foreign tourists up from the Miami airport and drove them to their hotels.  Fonseca described a typical day as including taking the tourists to and from the airport, Carvalho identified picking tourists up at the airport as a normal part of his duties, and Gross estimated that 20% of his time was spent taking tourists from the airport to their hotels.

In *Morris*, the Supreme Court recognized that the Commission had authority to set the maximum hours for drivers who spent only about 4% of their time engaged in interstate commerce but who were prepared at any time to transport goods in interstate commerce.  *Morris*, 332 U.S. at 433-34.  The drivers here spent more than 4% of their time transporting foreign passengers from the airport to their hotels, which the drivers concede was in interstate or foreign commerce.  Each day the drivers reasonably expected that they might have to engage in interstate or foreign commerce by picking up passengers at the airport because AllTour assigned the drivers different routes each day and reserved the right to make last minute changes to their schedules.  Because the drivers were subject to the

9

jurisdiction of the Secretary of Transportation, they were exempt from the FLSA's overtime requirement under the motor carrier exemption.

## IV.   CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment to AllTour.

**AFFIRMED.**